IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0391
════════════
 
In re Texas Department 
of
Family and Protective 
Services, Relator
 
 
════════════════════════════════════════════════════
On Petition for Mandamus
════════════════════════════════════════════════════
 
 
            
Justice O’Neill, joined by 
Justice Johnson and Justice Willett, concurring in part and 
dissenting in part.
                                    

            
In this case, the Department of Family and Protective Services 
presented evidence that “there was a danger to the physical health or 
safety” of pubescent girls on the Yearning for Zion (YFZ) Ranch from a pattern 
or practice of sexual abuse, that “the urgent need for protection required the 
immediate removal” of those girls, and that the Department made reasonable 
efforts, considering the obstacles to information-gathering that were presented, 
to prevent removal and return those children home. Tex. Fam. Code § 262.201(b)(1)–(3). As to this endangered population, I do not agree 
with the Court that the trial court abused its discretion in allowing the 
Department to retain temporary conservatorship until 
such time as a permanency plan designed to ensure each girl’s physical health 
and safety could be approved. See id. §§ 
263.101–.102. On this record, however, I agree that there was no evidence 
of imminent “danger to the physical health or safety” of boys and pre-pubescent 
girls to justify their removal from the YFZ Ranch, and to this extent I join the 
Court’s opinion. Id. § 262.201(b)(1).
            
Evidence presented in the trial court indicated that the Department began 
its investigation of the YFZ Ranch on March 29th, when it received a report of 
sexual abuse of a sixteen-year-old girl on the property. On April 3rd, the 
Department entered the Ranch along with law-enforcement personnel and conducted 
nineteen interviews of girls aged seventeen or under, as well as fifteen to 
twenty interviews of adults. In the course of these interviews, the Department 
learned there were many polygamist families living on the Ranch; a number of 
girls under the age of eighteen living on the Ranch were pregnant or had given 
birth; both interviewed girls and adults considered no age too young for a girl 
to be “spiritually” married; and the Ranch’s religious leader, “Uncle Merrill,” 
had the unilateral power to decide when and to whom they would be married. 
Additionally, in the trial court, the Department presented “Bishop’s Records” — 
documents seized from the Ranch — indicating the presence of several extremely 
young mothers or pregnant “wives”[1] on the Ranch: a sixteen-year-old “wife” 
with a child, a sixteen-year-old pregnant “wife,” two pregnant fifteen-year-old 
“wives,” and a thirteen-year-old who had conceived a child. The testimony of Dr. 
William John Walsh, the families’ expert witness, confirmed that the 
Fundamentalist Church of Jesus Christ of Latter Day Saints accepts the age of 
“physical development” (that is, first menstruation) as the age of eligibility 
for “marriage.” Finally, child psychologist Dr. Bruce Duncan Perry testified 
that the pregnancy of the underage children on the Ranch was the result of 
sexual abuse because children of the age of fourteen, fifteen, or sixteen are 
not sufficiently emotionally mature to enter a healthy consensual sexual 
relationship or a “marriage.”
            
Evidence presented thus indicated a pattern or practice of sexual abuse 
of pubescent girls, and the condoning of such sexual abuse, on the Ranch[2] — evidence sufficient to satisfy a 
“person of ordinary prudence and caution” that other such girls were at risk of 
sexual abuse as well. Id. § 
262.201(b). This evidence supports the trial court’s finding that “there 
was a danger to the physical health or safety” of pubescent girls on the Ranch. 
Id. 
§ 262.201(b)(1); see id. § 101.009 (“‘Danger 
to the physical health or safety of a child’ includes exposure of the child to 
loss or injury that jeopardizes the physical health or safety of the child 
without regard to whether there has been an actual prior injury to the child.”); 
cf. Tex. Dep’t of Human Servs. v. Boyd, 727 
S.W.2d 531, 533 (Tex. 1987) (affirming the termination of parental rights for 
“endanger[ing] . . . the physical well-being of [a] 
child,” and holding: “While we agree that ‘endanger’ means more than a threat of 
metaphysical injury or the possible ill effects of a less-than-ideal family 
environment, it is not necessary that the conduct be directed at the child or 
that the child actually suffers injury. Rather, ‘endanger’ means to expose to 
loss or injury; to jeopardize.”). Thus, the trial court did not abuse its 
discretion in finding that the Department met section 262.201(b)(1)’s requirements.
            
Notwithstanding this evidence of a pattern or practice of sexual abuse of 
pubescent girls on the Ranch, the court of appeals held — and the Court agrees 
today — that the trial court abused its discretion in awarding temporary conservatorship to the Department because the Department 
failed to attempt legal steps, short of taking custody, to protect the children. 
Based on the language of section 262.201 of the Family Code, I disagree. 
Subsections (b)(2) and (b)(3) of section 262.201 
require the Department to demonstrate that “reasonable efforts, consistent with 
the circumstances and providing for the safety of the child, were made to 
eliminate or prevent the child’s removal,” Tex. Fam. Code § 262.201(b)(2), and that “reasonable efforts have been made to enable 
the child to return home,” id. § 262.201(b)(3). 
The Court suggests, consistent with the mothers’ arguments in the court of 
appeals below, that the Department failed to adequately justify its failure to 
seek less-intrusive alternatives to taking custody of the children: namely, 
seeking restraining orders against alleged perpetrators under section 262.1015 
of the Family Code, or other temporary orders under section 105.001 of the 
Family Code. Id. 
§§ 262.1015, 105.001.
            
However, the Family Code requires only that the Department make 
“reasonable efforts, consistent with the circumstances” to avoid taking custody 
of endangered children. Id. § 262.201(b)(2). Evidence presented in the trial court indicated that 
the actions of the children and mothers precluded the Department from pursuing 
other legal options. When the Department arrived at the YFZ Ranch, it was 
treated cordially and allowed access to children, but those children repeatedly 
pled “the Fifth” in response to questions about their identity, would not 
identify their birth-dates or parentage, refused to answer questions about who 
lived in their homes, and lied about their names — sometimes several times. 
Answers from parents were similarly inconsistent: one mother first claimed that 
four children were hers, and then later avowed that they were not. Furthermore, 
the Department arrived to discover that a shredder had been used to destroy 
documents just before its arrival.
            
Thwarted by the resistant behavior of both children and parents on the 
Ranch, the Department had limited options. Without knowing the identities of 
family members or of particular alleged perpetrators, the Department could not 
have sought restraining orders under section 262.1015 as it did not know whom to 
restrain. See id. § 262.1015. Likewise, it could not have barred 
any family member from access to a child without filing a verified pleading or 
affidavit, which must identify clearly the parent and the child to be separated. 
See id. § 105.001(c)(3) (“Except on a 
verified pleading or an affidavit . . . an order may not be rendered . . . 
excluding a parent from possession of or access to a child.”). Furthermore, the 
trial court heard evidence that the mothers themselves believed that the 
practice of underage “marriage” and procreation was not harmful for young girls; 
the Department’s witnesses testified that although the Department “always wants 
kids to be with their parents,” they will only reunify children with their 
parents after “it’s determined that [their parents] know and can express what it 
was in the first place that caused harm to their children.” This is some 
evidence that the Department could not have reasonably sought to maintain 
custody with the mothers. Thus, evidence presented to the trial court 
demonstrated that the Department took reasonable efforts, consistent with 
extraordinarily difficult circumstances, to protect the children without taking 
them into custody. Id.
            
The record demonstrates that there was evidence to support the trial 
court’s order as it relates to pubescent female children. Although I agree with 
the Court that the trial court abused its discretion by awarding custody of male 
children and pre-pubescent female children to the Department as temporary 
conservator, I would hold that the trial court did not abuse its discretion as 
to the demonstrably endangered population of pubescent girls, and to this extent 
would grant the Department’s petition for mandamus. Because the Court does not, 
I respectfully dissent.
 
                                                                        
______________________
                                                                        
Harriet O’Neill
                                                                        
Justice
 
 
OPINION DELIVERED: May 29, 2008







[1] 
Although referred to as “wives” in the Bishop’s Records, these underage girls 
are not legally married; rather, the girls are “spiritually” married to their 
husbands, typically in polygamous households with multiple other “spiritual” 
wives. Subject to limited defenses, a person who “engages in 
sexual contact” with a child younger than seventeen who is not his legal 
spouse is guilty of a sexual offense under the Texas Penal Code. 
See Tex. Penal 
Code § 21.11(a)–(b). 
Those who promote or assist such sexual contact, see id. § 7.02(a)(2), or cause the child to engage in sexual contact, see 
id. § 21.11(a)(1), may also be criminally 
liable.                              
      

[2] 
The Family Code defines “abuse” to include “sexual conduct harmful to a child’s 
mental, emotional, or physical welfare” — including offenses under section 21.11 
of the Penal Code — as well as “failure to make a reasonable effort to prevent 
sexual conduct harmful to a child.” Tex. 
Fam. Code § 261.001(1)(E)–(F). In determining 
whether there is a “continuing danger to the health or safety” of a child, the 
Family Code explicitly permits a court to consider “whether the household to 
which the child would be returned includes a person who . . . has sexually 
abused another child.” Id. § 
262.201(d).